397 A.2d 803

## Vincent LASPROGATA

v.

## Donald M. QUALLS, M. D., Appellant,

### and

Lankenau Hospital, Zimmer U.S.A. and Zimmer/Rodewal Associates and Donald Dormer, Additional Defendant, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Feb. 2, 1979.

William F. Sutton, Philadelphia, for appellant.

Joseph M. Walker, Norristown, for appellee, Donald Dormer, additional defendant.

Before CERCONE, SPAETH and LIPEZ, JJ.

CERCONE, President Judge:

This is an appeal from an order of the Common Pleas Court of Montgomery County which granted additional defendant's motion for summary judgment and dismissed appellant-defendant's complaint against additional defendant. We affirm the decision of the lower court.

This action resulted from a traffic accident wherein the plaintiff, Vincent Lasprogata sustained a fractured right femur. An open reduction operation was performed on the femur and a metal plate was inserted and attached with two screws. One of the screws allegedly broke which impeded the healing process and necessitated further treatment.

Prior to the instant action, Lasprogata brought suit in trespass against Donald Dormer, the driver of the vehicle involved in the accident, alleging that Dormer's negligence was the proximate cause of his injuries. That lawsuit was concluded when Lasprogata signed a general release in which he released Dormer, for a sum of $15,000.00, from further liability on the claim. The release specifically stated it applied to "Donald Dormer only." Subsequently, Lasprogata brought suit against Dr. M. Qualls, the physician who performed the open reduction surgery, the hospital, and the manufacturer and distributor of the surgical products involved. Dr. Qualls joined Donald Dormer as an additional

defendant alleging that the injuries averred by the plaintiff were proximately caused solely by Dormer's negligence in the auto accident. Qualls' complaint alternatively averred that Dormer was "liable for contribution with defendants, or jointly or severally liable."

Dormer moved for summary judgment on the basis of the release he had executed with Lasprogata in the prior action. The lower court granted the motion after appellant doctor had filed an answer and memorandum of law opposing the motion. Appellant doctor's motion for reconsideration and reargument was denied and this appeal followed.

Appellant asks us to address two issues [1] which we believe revolve around the central question of whether the operator of the vehicle which injures a plaintiff and the physician who allegedly rendered negligent treatment of those injuries are joint tortfeasors. The lower court found as a matter of law that the original wrongdoer and the treating physician were not joint tortfeasors and no right of contribution [2] existed between them. The court held that

1. Appellant states the two issues as follows:

(1) Where, as here, a defendant alleges that a third person is or may be jointly or severally liable with him on the cause of action declared upon by the plaintiff, may defendant join that third person as an additional defendant irrespective of the fact that the third person has procured a release from plaintiff?

(2) Is an alleged tortfeasor relieved from his liability to make contribution to other alleged tortfeasors by virtue of the fact that he has procured a release from plaintiff which release does not provide for a pro rata reduction of the damages recoverable against all other alleged joint tortfeasors?

2. The right of *contribution* exists only between joint tortfeasors. Contribution distributes the loss equally or each joint tortfeasor pay his or her pro rata share. A right of *indemnity* exists when the entire loss is imposed on one person. For example, an original wrongdoer may have the right of indemnity against the treating physician if the original tortfeasor is held liable for damages resulting from both his negligence and that of the physician. However, whenever two actions are brought for the separately identifiable acts of negligence on the part of the original wrongdoer and the treating physician, the *apportionment* of damages between the two causes should take place as we allow in the instant case. See Annot. 8 A.L.R.3d 639, 641 (1966). This clarification of terms on the division of damages facilitates our analysis of this case.

the doctor's complaint against the driver did not state a valid cause of action because the injuries sustained by the plaintiff arose in part from the unrelated action of the defendant-doctor alone thus negating the status of joint tortfeasors between the doctor and the additional defendant.

We agree with the decision of the lower court. Case law specifically holds that a tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are *not* joint tortfeasors. *Bandle v. Vernick*, 66 Pa.D.&C.2d 457 (1974); [3] *Gertz v. Campbell*, 4 Ill.App.3d 806, 282 N.E.2d 28, aff'd in part and rev'd in part on other grounds, 55 Ill.2d 84, 302 N.E.2d 40 (1973); Annot. 8 A.L.R.3d 639 (1966). The acts of the original wrongdoer and the negligent physician are severable as to time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the injured plaintiff. While they are two active tortfeasors, they are not actually acting "jointly" when using that term in the strict sense.[4] As we have held in *Embrey v. Borough of West Mifflin et al.*, 257 Pa.Super. 168, 390 A.2d 765 (1978),[5] to the extent that the acts of the

3.  Our research does not reveal any Pennsylvania appellate case law specifically reaching this conclusion. However, we rely on *Bandle v. Vernick*, supra, which we feel is a well-authored opinion by Judge Wieand who has since been appointed to our Court.

4.  A joint tortfeasor is defined as, ". . . two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 12 P.S. § 2082. In Black's Law Dictionary, to be a joint tortfeasor, "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury." 4th Ed. (1968) page 1661. A joint tort is defined as "where two or more persons owe to another the same duty and by their common neglect such other is injured . . ." *Id.* at 973.

5.  It is important to note that the use of the word "joint tortfeasors" in the *Embrey* opinion 257 Pa.Super. at page 168, 390 A.2d 765 does not use the term in the strict sense as we are in using it here. Nor does the case of *Shamey v. State Farm Mutual Auto. Ins. Co.*, 229 Pa.Super. 215, 331 A.2d 498 (1974) which *Embrey* cites as authority for that point. The *Shamey* case specifically states two separate accidents were involved.

original tortfeasor and those of the physician are capable of separation, the damages should be apportioned accordingly. This apportionment does not necessarily follow the statutory rules for contribution among tortfeasors applicable in situations where such tortfeasors are characterized as joint.[6] Instead, where identifiable acts of negligence of the original wrongdoer and the negligent physician are separate from each other in nature and time, the damages are accordingly apportionable.

This position does not ignore the Restatement (Second) of Torts § 457 which says:

"If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third parties in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner."

Pennsylvania case law supports this Restatement section. *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937); *Lebesco v. Southeastern Pa. Transp. Auth.*, 251 Pa.Super. 415, 380 A.2d 848 (1977). Although the posture of Pennsylvania law in accordance with § 457, supra, would seem to be at odds with the principle of the separateness of liability between the tortfeasor and the doctor in this case, there is no inconsistency present. This is so because the injured plaintiff could have brought suit against Dormer, the driver, in the prior action for the full extent of his injuries, that is, the pain and suffering and expenses of the fractured femur as well as the aggravation of the injury. Instead, plaintiff sued Dormer for the injuries he caused, after which Dormer alone was released. Subsequently, plaintiff sued the doctor, hospital, and manufacturer of the surgical supplies for their alleged negligent acts and breach of contract only from the time their respective conduct began; he does not claim damages for any injury Dormer may have caused him since he already recovered those damages in the prior action.

6. 12 P.S. § 2082 et seq.

■ Thus, Section 434 of the Restatement (Second) is pertinent and applicable in reconciling the apparently inconsistent views concerning the issue before us.

Section 434 provides that:

"(1) It is the function of the court to determine . . .

(b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and

(2) It is the function of the jury to determine, in any case in which it may reasonably differ on the issue,

. . .

(b) the apportionment of the harm to two or more causes."

In the *Embrey* case, supra, the damages were apportioned by the jury in relation to the separate and independent negligent acts of the original wrongdoer and the acts of the physician. It is significant to note that in *Embrey*, both defendants were original defendants in the suit. In the instant case, Dormer, the driver and additional defendant, has already been released from his obligation and owes no monies to Lasprogata nor to the doctor who is accountable for his own allegedly negligent acts. Therefore, the instant action should proceed against the original defendants alone.

■ Some clarification is necessary concerning the effect of the release in this case. The traditional rule was that a release of the original wrongdoer also released the negligent physician. *Thompson v. Fox*, supra; Annot. 39 A.L.R.3d 260 (1971). This was based on the theory that there could only be one full compensation for a wrong. However, subsequent cases recognized that the release of the original wrongdoer may not have fully compensated an injured person for the damages he sustained at the hand of the treating physician. A growing number of courts have either accepted or are accepting this latter rationale and recognize that a release of the original wrongdoer does not in itself preclude an action against the negligently treating physician. *Derby v. Prewitt*, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962);

*Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876 (1944); see cases compiled in 39 A.L.R.3d at 273. The appellate courts of Pennsylvania have not squarely dealt with this issue, but lower court decisions have begun to follow the more modern rule. E. g., *Com. Nat'l Bank v. Harrisburg Polyclinic Hosp.*, 71 Pa.D.&C.2d 542 (1975); *Bandle v. Vernick*, supra; *Gealt v. Kubiak*, (No. 2), 62 Pa.D.&C.2d 482 (1973). The crucial issue then becomes whether the release was intended to release all parties and be full compensation on the claim. In the release before us, the express language released "Donald Dormer only." The consideration for that release covered only the damages sustained as the result of Dormer's negligent acts. Under Section 434 of the Restatement, supra, the facts of this case support the principle which holds that plaintiff's damages resulting from the doctor's negligence remain apportionable. In the suit against the doctor, Lasprogata will be restricted to the proof of damages directly resulting from the physician's actions, thus preventing double recovery.

Appellant does not question the propriety of the suit against him,[7] but only the effect of the release on the rights between him and the additional defendant. The cases cited by appellant [8] clearly deal with the possibility of true joint liability, and not with the unique situation of an original wrongdoer and the separate acts of a treating physician.

Order of the lower court affirmed.

7. This position alone seems to indicate appellant's acknowledgment of the separateness of his acts and liability from that of the original wrongdoer.

8. *Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960); *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956); *Long v. Thomasberger*, 14 Pa.D. &C.2d 30 (1958); *Brown v. Hertzler*, 13 Pa.D.&C.2d 50 (1957); *Carter & DiNino v. Kemp*, 103 P.L.J. 81 (1954).